**Glenn ALLEN; et al., Plaintiffs–Appellants,**

v.

**DIEBOLD, INC., Defendant–Appellee.**

**No. 93–3012.**

United States Court of Appeals,
Sixth Circuit.

Argued March 7, 1994.

Decided Sept. 6, 1994.

Jeffrey H. Friedman (briefed), Lisa M. Gerlack (argued and briefed), Lillian V. Blageff (argued), Friedman, Domiano & Smith, Cleveland, OH, for Glenn Allen, et al.

Brian P. Gillan (briefed), Roger A. Weber (briefed), Frederick H. Burton, Taft, Stettinius & Hollister, Cincinnati, OH, Gust Callas (briefed), Black, McCuskey, Souers & Arbaugh, J. William Sekula (briefed), Warren W. Dettinger (briefed), Canton, OH, for Diebold, Inc.

Robert J. Gregory, Office of Gen. Counsel, Washington, DC (argued and briefed), for E.E.O.C. amicus curiae.

Before: MERRITT, Chief Judge; NORRIS, Circuit Judge; and GUY,* Senior Circuit Judge.

MERRITT, Chief Judge.

In this age discrimination appeal, the theory of the plaintiffs' case is that their employer replaced two unionized Ohio manufacturing plants with two new non-union plants in Virginia and South Carolina in order to replace several hundred older Ohio workers with approximately 100 younger workers at the new plants. At the Ohio plants 80% of the workers were over 40, but 83% of the new workers at the new plants were under 40. Approximately sixty of the older workers filed suit. They argue that the district court erred when it dismissed their claims on statute of limitations grounds. 807 F.Supp. 1308. They contend that their complaints were timely because the 300–day statute of limitations in this case[1] began to run only

---

* The Honorable Ralph B. Guy, Jr. assumed senior status on September 1, 1994.

1. No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has

after the workers learned that the manufacturer had actually hired younger workers at the new plants, not, as the district court held, approximately a year earlier when the older Ohio workers were notified of their layoffs and the *plans* to open new plants.

Prior to the district court's dismissal of the case, the parties had completed discovery and the case had been set for trial. The district court had under advisement defendant's motions for summary judgment on the merits and on the statute of limitations issue. (App. 406) The district court granted the summary judgment motion on the limitations question on the eve of trial. On appeal, the parties have briefed both summary judgment issues—the limitations issue and the merits.

Because we find that plaintiffs would not be able to prevail on the merits regardless of the outcome of the statute of limitations question, we affirm the judgment of the district court on alternative grounds. *Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir.1988), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), provides authority, if any is needed, for the power of the court to affirm on alternative grounds not reached by the court below.

We conclude that defendant's motion for summary judgment on the merits is well taken. The issue on the merits is simpler and more straightforward than the limitations issue, which requires the court to determine when the "facts that would support a charge of discrimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights...." *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975). We cannot say that such facts were ever "apparent" or sufficiently disclosed to support an action because we believe that plaintiffs have failed to offer evidence or a legal theory that would support an age discrimination claim. The only facts at issue

here are the statistics regarding the ages of the new employees hired by Diebold to work at the Virginia and South Carolina plants. It would not be useful for us to analyze the statute of limitations question since, for the reasons set forth below, these statistics are not "facts that would support a cause of action." In addition, on the limitations issue, we are faced with a situation in which there is no useful caselaw. No cases prescribe the criteria for determining the accrual of the limitations period in plant closing and relocation situations, and one may seriously question the defendant's view that plaintiffs are required to file their EEOC complaint and their age case even before uncovering specific information about the ages of their so-called "replacements" and their employer's method of recruitment. In contrast, the requirements for supporting a claim of age discrimination are well established, and we are in agreement with the defendant that plaintiffs could not prevail on the merits.

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer to discriminate against an individual on the basis of age.[2] In *Hazen Paper Co. v. Biggins*, 507 U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court clarified the scope of this prohibition. The Court held that the ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors—pension status, seniority, wage rate—that are empirically correlated with age. Of course an employer may not use any of these factors as a proxy for age, but age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation. *Id.* —— U.S. at ——, 113 S.Ct. at 1706.

The purpose of the ADEA, according to the Supreme Court, is to protect older workers from being "deprived of employment on the basis of inaccurate and stigmatizing stereotypes" and to ensure that employers evalu-

---

been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed ... within 300 days after the alleged unlawful practice occurred....

29 U.S.C. § 626(d)(2).

**2.** It shall be unlawful for an employer—

to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....

29 U.S.C. § 623(a)(1).

ate their employees on the basis of their merits and not their age, *Id.* (citing *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) and *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 422, 105 S.Ct. 2743, 2756–57, 86 L.Ed.2d 321 (1985)):

> Although age discrimination rarely was based on the sort of animus motivating some other forms of discrimination, it was based in large part on stereotypes unsupported by objective fact.... Moreover, the available empirical evidence demonstrated that arbitrary age lines were in fact generally unfounded and that, as an overall matter, the performance of older workers was at least as good as that of younger workers.

*Id.* (quoting *EEOC v. Wyoming,* 460 U.S. at 231, 103 S.Ct. at 1057–58). Thus, "when the employer's decision *is* wholly motivated by factors other than age," such as the costs frequently associated with experienced, skilled, pensioned, high wage workers, "the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age...." *Id.* (emphasis in original).

█ The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations. Unlike law and social policy in many European countries, the laws of the United States do not prohibit or seriously discourage these plant closing and relocation activities and the attendant dislocation, unemployment and new employment.[3] States and counties in the United States compete with each other for companies contemplating relocation. Labor laws like the National Labor Relations Act do not discourage such relocations or prohibit the closing of a unionized plant in one part of the country and the opening of a nonunion plant in another part of the country or in a foreign country. The North American Free Trade Agreement contemplates such relocations. Although the parties here do not cite any empirical studies or statistics on the number or effect on workers of such relocations, we know from experience and from history that such relocations have occurred frequently over the course of the last century. In the past several decades there has been a substantial movement of industry to the southern and border states, as well as to foreign countries. The plant relocations in this case follow that trend.

In order to state and support a claim then, plaintiffs must allege that Diebold discriminated against them because they were old, not because they were expensive. Specifically, plaintiffs must allege facts which, if true, would support a prima facie case of age discrimination. We have found no case that articulates the elements of a prima facie case of discrimination in the context of a plant closing where transfer or recall rights are not at issue. In *Barnes v. GenCorp Inc.,* this Court determined that when an employer reduces the size of its work force, a plaintiff may establish a prima facie case of discrimination by showing "direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." 896 F.2d 1457, 1465 (6th Cir.1990) (citations omitted), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). The *Barnes* panel noted that in a typical reduction in force case, the precise standard for a prima facie case of discrimination set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), is not particularly useful.[4] *Barnes,* 896 F.2d at 1465. Therefore the panel found it sufficient for a plaintiff to proffer evidence of a significant disparity in age between those employees who were discharged and those who were

---

**3.** For example, the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101–09, merely creates a system for notification of the workers who will be affected by plant closings.

**4.** The *McDonnell Douglas* test requires that a plaintiff show (1) he is member of protected class; (2) he applied for the job and was qualified; (3) he was rejected despite being qualified; and (4) the employer continued to seek applicants after he was rejected. The Court found this test inapposite in *Barnes* because employed persons are presumed to be qualified for their positions and those positions are unlikely to remain vacant because the employer is eliminating them.

retained, so long as the plaintiff also eliminates the most common non-discriminatory explanations for the disparity. *Id.* at 1466; *see also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 1093–94 n. 6, 67 L.Ed.2d 207 (1981) (*McDonnell Douglas* standard is flexible depending on factual situation). This latter requirement is essential because a prima facie case, by definition, creates an inference that the employer intentionally discriminated. A plaintiff must present evidence of actions taken by the employer which, if unexplained, are more likely than not based on consideration of impermissible factors. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)).[5]

█ Although plant closings and relocations are factually distinct from a reduction in force situation, we think the standard articulated in *Barnes* is somewhat helpful. Instead of showing direct, circumstantial or statistical evidence that older workers were discharged while younger workers were retained, plaintiffs in a plant closing case must show that an employer's decisions regarding which factories to close or downsize were based on consideration of the ages of the workers at those factories. In this case, plaintiffs must offer statistics relating to discharges and new hires which are so unusual that, absent explanation by defendant, we could permit a jury to infer age discrimination on that basis alone.

█ The statistics offered by plaintiffs do not appear unusual on their face. Eighty percent of the employees who were discharged due to Diebold's plant closing and reduction in force in Ohio were over 40. This figure was to be expected since Diebold had laid off workers according to seniority during previous cutbacks, effectively eliminating most of its younger workers. Plaintiffs make no showing that this figure is disproportionate in relation to the percentage of older Diebold workers in Ohio and indeed they could not, since almost all of the workers retained by Diebold in Ohio are over the age of 40. (App. 460) Nor do we have reason to believe that it is at all unusual that eighty-three percent of the new workers hired in Virginia and South Carolina are under 40. Plaintiffs present no evidence that this figure is disproportionate to the hiring pool in those areas or that age played any role in Diebold's hiring processes at the new plants. Without more, these statistics are not really probative of anything and far from what is required before we could allow a factfinder to infer that the defendant intentionally discriminated.

Plaintiffs themselves acknowledge that the most common reasons for this type of relocation—reduced labor costs and favorable treatment by the host states—were the motivating factors behind Diebold's actions in this case. They present no evidence that Diebold acted pursuant to anything other than a business decision but contend that other evidence demonstrates Diebold's bad faith. Plaintiffs point out that none of the Ohio workers were offered transfers to the new plants at their Ohio wage and benefit rates but acknowledge that their contract did not provide for such transfers.[6] They also argue that the new plants are non-union, that Virginia and South Carolina subsidized some labor-related costs, that Diebold used subjective criteria in its hiring practices and that the relocation was not required by economic necessity. *See* Final Pretrial Order (App. 1036). We do not see how any of these allegations relate to a claim of age discrimination.

Nor is there any evidence that Diebold engaged in a pattern of discriminatory conduct. Plaintiffs concede that Diebold discharged them according to seniority and that

---

5. The plaintiff must prove this by a preponderance of the evidence. The burden then shifts to the defendant to provide a non-discriminatory reason for its actions. Should the defendant succeed the burden shifts back to the plaintiff to show by a preponderance of the evidence that the reasons given by the defendant are pretextual. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–96.

6. *Plaintiffs stipulated that none of them would have been willing to relocate to Virginia or South Carolina to work for Diebold for the wages and benefits the company offered at the new plants.* (App. 1031)

the company has acted pursuant to the governing collective bargaining agreement at all times.[7] These facts indicate that Diebold's past cutbacks and the recent downsizing have disproportionately affected younger workers in Ohio. Plaintiffs' evidence does not support a claim of age discrimination. After careful consideration of the entire record we are unable to find any additional evidence upon which a factfinder could rely in determining that Diebold acted with discriminatory intent.

The heart of plaintiffs' allegation—that defendant replaced them with younger workers because they were too costly—does not state a claim under the ADEA. Plaintiffs allege that Diebold downsized its Ohio operations and hired younger, cheaper, non-union employees in Virginia and South Carolina in order to increase its profitability. They argue that their salaries and benefits were a burden to the company whose management believed it could make more money by moving to a "right to work" state, hiring fewer workers and paying them lower wages. Plaintiffs even proffer expert testimony regarding just how much money Diebold can be expected to save over the long term by virtue of its reorganization. This allegation—that Diebold's decision to restructure was driven by financial considerations based on the profit motive—does not state a claim under the ADEA. The ADEA does not bar the discharge of older employees but only prohibits employers from discriminating against them. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir.1994) (decisions based on salary considerations will not support an ADEA claim).

The basic problem with plaintiffs' case is that the Congress and the courts in interpreting our labor laws and our law of contract have made the social judgment, rightly or wrongly, that our capitalistic system, Darwinian though it may be, will not discourage companies from relocating on the basis of

their own calculations of factors relating to efficiency and competitiveness. The rules of the marketplace govern. By so reflecting commercial interests, the institutions of government serve—according to current legal and economic theory—the long-term best interests of society as a whole. That is the basic social policy the country has opted to follow. Therefore we affirm the district court's grant of summary judgment for defendant on the basis that plaintiffs have failed to state or support a claim of age discrimination.

---

7. Plaintiffs suggest that the discharge of two salaried employees who were over forty and the retention of two younger, less senior, salaried employees at the Canton plant is evidence of a pattern of discrimination. We disagree. Management personnel testified that salaried persons were discharged when their jobs were eliminated and kept on when their jobs were retained. Plaintiffs have offered absolutely no evidence that this particular decision—regarding salaried employees *not* governed by the labor contract's seniority requirements—was at all improper or that the ages of the persons involved is anything but fortuitous.