**Barbara HALLORAN, Plaintiff,**

**v.**

**MINNESOTA OLD NORTHWEST AGENTS, LIMITED PARTNERSHIP, Defendant.**

**No. 98–2450 Ml/A.**

United States District Court,
W.D. Tennessee,
Western Division.

June 25, 1999.

Sandra C. Isom, Dowden Zdancewicz & Camp, Memphis, TN, for Barbara Halloran, plaintiff.

Heather C. Webb, Allen, Scruggs, Sossaman & Thompson, Richard H. Allen, Jr., Allen Scruggs Sossaman & Thompson, P.C., Memphis, TN, for Minnesota Old Northwest Agents, Limited Partnership, defendants.

William M. Jeter, Glassman Jeter Edwards & Wade, P.C., Memphis, TN, for Scott Sneed.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McCALLA, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. After hearing further argument from the parties on June 18, 1999, the Court finds Defendant's motion well-taken and grants the motion.

### *Background.*[1]

Defendant Old Northwest Agents (ONA), with corporate offices in Minneapolis, Minnesota, sold and serviced sever-

---

1. Defendant has introduced much evidence that depicts a different version of Plaintiff's employment with and departure from ONA.

As it must on a motion for summary judgment by a defendant, however, the Court resolves

al brokerage related insurance products.[2] At one point, ONA had approximately seventy district field offices throughout the nation.

Dale Ernst, born August 8, 1952, was the district sales manager of ONA's Memphis/Cordova office at all times relevant to the events in controversy and continues in that position to the present time. On June 5, 1985, Ernst hired Betty Roberson, born July 7, 1949; Roberson was responsible for administrative tasks and eventually became the office manager of the Memphis/Cordova office. Ernst hired Ann Beck, born December 8, 1941, in 1986; Beck was responsible for handling individual insurance policies, maintaining files, acting as receptionist and secretary, and occasionally doing some pension work.

In January, 1990, Ernst hired Plaintiff Barbara Halloran, born October 17, 1944, as a field service representative (FSR). In that position, she had primary responsibility for renewing group insurance policies each year. As her position required frequent meetings with clients, she was out of the office most of each workday. Plaintiff's supervisor throughout her time at ONA was Ernst.

In September, 1990, Plaintiff and Roberson had an altercation. Plaintiff contends that Roberson started yelling at her, and Plaintiff yelled back. (Halloran Dep. at 134–38.)[3] The dispute was sufficiently loud and long that Beck came to the site of the dispute from a different part of the office to ask both Plaintiff and Roberson to be quiet. (Halloran Dep. at 133.) Afterwards, Ernst had a meeting with Plaintiff and Roberson at which he instructed them to get along better. (Halloran Dep. at 141.)

A few weeks after this incident, Beck started criticizing Plaintiff in a meeting and then started crying. (Halloran Dep. at 160.) Ernst, who was present at this exchange along with Roberson, again exhorted his employees to get along.[4] (Halloran Dep. at 161.) After these two incidents, Plaintiff claims she worked well with both Roberson and Beck until 1995.

Plaintiff contends that Roberson and Beck commenced a practice of harassing her on June 8, 1995. On that day, Beck failed to notify one of Plaintiff's clients that Plaintiff was ill and would be unable to keep an appointment. (Halloran Dep. at 143–45.) Later that day, Roberson told Plaintiff that Ernst had instructed her and Beck to monitor her telephone calls and keep track of her activities. (Halloran Dep. at 145–46.) Plaintiff contends that Beck and Roberson continued to harass her from that date until her employment ended by not getting her supplies, not talking to her, and failing to announce phone calls. (Pl.'s Ex. 2.) Plaintiff has introduced a few notes made by Roberson and Beck after April, 1996 about Plaintiff's erratic behavior in the office. (Beck Dep. Exs. 1 and 2; Halloran Ex. 3.) Plaintiff, however, herself had commenced monitoring the behavior of her co-workers in early 1994, keeping notes about instances when they made personal calls and left the office early. (Def.'s Ex. 8.)

On December 14, 1995, Ernst gave Plaintiff her performance evaluation for the year. Although noting Plaintiff's tendency to make excessive personal calls, the evaluation was generally favorable, giving Plaintiff sixty-seven out of a possible one hundred points for her job performance. (Ernst Aff. ¶ 14, Ex. A.)

these conflicts in the evidence in favor of Plaintiff in its recitation of facts.

**2.** On July 1, 1998, Principal Life Insurance Company acquired the assets of ONA and the marketing rights to its name.

**3.** The Court advises counsel for Plaintiff that the abbreviations as set forth at Practitioners' Note 7 in *The Bluebook: A Uniform System of Citation* (16th ed.1996) are helpful when cit-

ing to deposition and affidavit evidence. Additionally, the Court notes that the persistent abbreviation of words such as "statement," "regarding," "appointment," and "evaluation" in text detracts significantly from the clarity and thus the forcefulness of prose.

**4.** Plaintiff contends that these two incidents were fabricated in an attempt to replace her with a younger woman, Suzanne Davis. She points to no support for this assertion.

At a meeting with Plaintiff on February 8, 1996, Ernst told Plaintiff that, "I have two women out there [Roberson and Beck] who will say anything I tell them to say about you," and that she would have to quit as he could not fire her. (Pl.'s Dep. at 193–94.) Plaintiff contends that Ernst screamed at her during this meeting and, while she raised her voice at him, she did not scream. (Halloran Dep. at 196.)

After this confrontation, Ernst contacted Doreen Haddy in Minneapolis, an assistant vice president of ONA in charge of personnel and human resources, to tell her of his difficulties with Plaintiff. Haddy informed Ernst that she could not be terminated without process, and that Ernst should document Plaintiff's problems. At this time, Ernst did not have the authority to terminate Plaintiff's employment; only Haddy and Jim Belligan, ONA's senior vice president, had this power. (Ernst Aff. ¶ 22; Haddy Aff. ¶ 2, 10–11.) Ernst then sent a written description of his meeting with Plaintiff to Haddy. Haddy and Belligan decided to put Plaintiff on sixty days probation and Haddy drafted a letter of probation which she sent to Ernst. (Haddy Aff. ¶ 11; Belligan Aff. ¶ 4.)

Plaintiff had gone on vacation after the February 8 meeting. Upon her return, Ernst presented her with the letter of probation in front of Roberson. This meeting also became confrontational; Plaintiff refused to sign the probation letter and accused Roberson of calling her a whore. Plaintiff also complained of being subjected to six years of harassment by the other employees in her office. (Ernst Aff. ¶ 2–3; Roberson Aff. ¶ 17–18; Halloran Dep. at 400; Hearing Ex. 1.) After this meeting, Beck and Roberson stopped speaking with Plaintiff and ceased processing her work. (Halloran Dep. at 207–08, 326.)

After receiving the letter of probation on February 27, Plaintiff took a week's sick leave from February 29 through March 6.

As this absence followed so closely upon the writing of the letter of probation, Haddy called Plaintiff at home on March 6 and requested that she bring a doctor's note when she returned from sick leave. During this conversation, Plaintiff informed Haddy of her suspicion that Ernst wanted to fire her and hire a younger woman. Plaintiff also told Haddy that she believed Ernst was creating a file of false information to support her termination. Haddy responded that age had not been the factor motivating the letter of probation. (Haddy Dep. at 131–37; Haddy Aff. ¶ 14, Ex. 20.)

Plaintiff traveled to Minneapolis for an ONA seminar from March 17 through March 21, 1996. Plaintiff did not speak with Haddy, Belligan or anyone else in ONA management about the feared discrimination. (Haddy Aff. ¶¶ 18–22; Halloran Aff. ¶ 34.)

Throughout her employment, Plaintiff had regularly filled out daily appointment sheets detailing the appointments she wished to keep each day at the offices of various ONA clients. After March 13, 1996, Ernst began checking on Plaintiff's attendance at these meetings; he often found that she had not visited businesses that she listed on her sheet. (Ernst Aff. ¶¶ 27–28, 33, 35, 41.) Plaintiff asserts that the daily appointment sheets merely listed those appointments she wished to keep each day and that she often had to modify her plans due to problems in transportation, her schedule, or the client's schedule. (Halloran Aff. ¶¶ 37–39.)

On April 18, 1996, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging that she had been discriminated against on the basis of her age and that she had been retaliated against for complaining of her treatment. (Compl. at Ex. A)

In the summer of 1996, ONA, at the suggestion of Haddy, decided to eliminate the FSR position because it did not contribute to the company's profitability.[5]

**5.** Plaintiff expends some effort questioning the wisdom of the elimination of the FSR

The decision was then made to eliminate the FSR position by the end of 1996 at the latest. (Belligan Aff. ¶¶ 12–13; Haddy Aff. ¶¶ 27–28.) Before the meeting, Haddy had prepared a list of five FSRs who could be immediately terminated; this list included Plaintiff and four FSRs in California. Haddy recommended that ONA terminate the California employees because she expected a decline in business in that state. She included Plaintiff on her termination list in part because of Plaintiff's difficulties with Ernst, Beck and Roberson, and also because Haddy expected a decline in the Memphis market.[6] (Haddy Aff. ¶¶ 29–31.) A few days after ONA's staff meeting, Belligan decided to accept Haddy's recommendations and terminate the five listed employees. (Belligan Aff. ¶ 14.) On September 4, Plaintiff was the first of the listed employees to be terminated; three others were fired by mid-October. The fifth employee changed her office and position but continued to work for ONA. (Haddy Aff. ¶¶ 33, 39–40.)

ONA hired no replacement for Plaintiff after her termination; Ernst handled most of the policy renewals after her departure. The Memphis office did, however, hire temporary assistance to perform clerical work when one of its remaining employees was absent from work. (Ernst Aff. ¶¶ 57–59.)

By the end of 1996, no FSRs remained within the ONA organization. At the time it was eliminating the FSRs, ONA also created the sales support assistant (SSA) position. Unlike FSRs, SSAs worked in the office to support district managers with new sales and reported to the office manager. Of the thirty-six individuals who had been FSRs in 1996, eleven were laid off while fifteen others became SSAs, eight became sales representatives, and two took other positions with ONA. (Belligan Aff. at Ex. B.) ONA asserts that it did not offer Plaintiff another position within its organization because the Memphis office did not need the staff and because of her difficulties with her coworkers. (Belligan Aff. ¶ 23; Haddy Aff. ¶ 37.)

### Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," id. at 323, 106 S.Ct. 2548 and the nonmoving party is unable to make such a showing, summary judgment is appropriate. See Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

position. (Pl.'s Resp. Summ. J. at 31–33.) Even if she is correct, the Court is unable to discern the relevance of this argument. The possibility that ONA made an unwise business decision does not increase the likelihood that it terminated Plaintiff for an impermissible reason. That ONA implemented a genuine corporate restructuring in order to terminate Plaintiff for an impermissible reason is an extremely far-fetched argument. Of course, Plaintiff might attempt to show that ONA did not, in fact, restructure. However, as it is undisputed that ONA eliminated the FSR classification and laid off a number of employees at the end of 1996, the authentic nature of this restructuring is not at issue. Plaintiff merely contests whether her inclusion in this process was a subterfuge for illegal discrimination.

**6.** ONA had already closed its offices in Jackson, Mississippi on April 1, 1996 and Little Rock, Arkansas on January 1, 1996 because of a decline in business in the region. (Belligan Aff. ¶ 15.)

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### Age Discrimination.

■ The Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Age itself must be the motivating factor behind the adverse employment action for there to be a cognizable ADEA claim. *See Allen v. Diebold, Inc.,* 33 F.3d 674, 676 (6th Cir. 1994). "The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Id.* at 677.

A. Harassment.

1. Prima facie case.

■ The ADEA prohibits the creation of a hostile work environment in the workplace based upon an employee's age. *See Crawford v. Medina General Hosp.,* 96 F.3d 830, 834 (6th Cir.1996). In order to make out a prima facie claim for harassment under the ADEA, an employee must demonstrate that:

1. The employee is 40 years or older;

2. The employee was subjected to harassment, either through words or actions, based on age;

3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. There exists some basis for liability on the part of the employer.

*Id.,* at 834–35.

■ In order to make a showing under the second prong of the prima facie test, a plaintiff must demonstrate a nexus between the alleged harassment and her age; merely citing instances of unpleasant treatment is not sufficient. The Court of Appeals for the Sixth Circuit addressed this issue in *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830 (6th Cir.1996).

The plaintiff in *Crawford* claimed that she was being subjected to a hostile environment in violation of the ADEA and introduced much evidence that her office was a very unpleasant place to work. In support of her claim, however, she pointed to only two comments by her supervisor that tended to depict older people in a bad light. *See Crawford,* 96 F.3d at 832–33. In affirming the district court's grant of summary judgment in favor of the employer, the Sixth Circuit warned against the syllogism: "A) My coworkers hate me; B) I am old; C) My coworkers hate me because I'm old." *Id.* at 836. The court went on to hold that, absent evidence that arguably neutral conduct was in fact motivated by animus on the basis of age, it is not prohibited by the ADEA. *See id.; see also Starks v. New Par,* 181 F.3d 103, 1999 WL 357757, at *3 (6th Cir. May 11, 1999)(dismissing Title VII hostile environment claim because antagonistic conduct was motivated by a supervisor's discipline of subordinates and not race).

■ In making a showing under the third prong of her prima facie case, an age discrimination plaintiff must show that her

harassment is "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(internal brackets and quotations omitted). The harassment must be both objectively and subjectively offensive and pervasive; that is, it must be sufficiently severe that a reasonable person would find her environment hostile and the employee must have in fact perceived her environment as a hostile one. *See id.*

■ When determining whether an environment was an objectively hostile one, courts should look at factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

2. Plaintiff's proffered evidence.

First, as Plaintiff has introduced no evidence that she was harassed because of her age, she has failed to demonstrate that she can make a showing under the second prong of her prima facie case. She makes no allegation that any ONA employee ever ridiculed or insulted her based upon her age. In fact, of the two employees Plaintiff alleges were responsible for most of the harassment she suffered, Beck was older than her and Roberson was only slightly younger than Plaintiff.

Instead, Plaintiff's theory is that Ernst wished to replace her with a younger employee and enlisted the assistance of Beck and Roberson in order to fulfill this plan. Specifically, Plaintiff contends that Ernst wished to replace her with Vicki Stanford,[7] an employee of ONA in its Jackson, Mississippi office who had been born in 1961.

In support of this theory, Plaintiff offers the following evidence: [8]

1) in February, 1993, Ernst volunteered to drive Plaintiff to the airport when she was leaving for an ONA seminar and subsequently Ernst and Plaintiff bumped into Stanford in the airport (Halloran Dep. at 177–180.); [9]

2) in 1993 or 1994, Ernst made a comment to George King, another ONA employee, that he would have an interest in dating Stanford if anything were to happen to his wife (King Aff. ¶ 6.);

3) in December, 1995, Ernst stated that Stanford wished to move to Memphis and that he was thinking about hiring her (Halloran Dep. at 183–84.); and

4) according to Plaintiff, "[o]ne of Dale[ Ernst]'s favorite comments was that a 'hot young thing in a short skirt can sell anything.'" [10] (Halloran Aff. ¶ 6.)

■ This evidence does not support a finding that any mistreatment of Plaintiff was motivated by her age. Ernst's alleged comment that "a hot young thing in a short skirt can sell anything," for instance, is a stray comment irrelevant to the determination of whether Plaintiff was discriminated against on the basis of age. The Court of Appeals for the Sixth Circuit has repeatedly found that comments that are temporally and topically distant from some

---

**7.** Since the events underlying this suit took place, Vickie Stanford has changed her name to Vickie Cayson. For the purpose of consistency, the Court refers to her by her former name.

**8.** Plaintiff also contends that Ernst had offered Stanford a position some time before 1996. (Halloran Resp. Summ. J. at 26.) However, as she proffers only hearsay evidence on this point, the Court does not consider this allegation.

**9.** The relevance of this incident is not clear. Apparently, Plaintiff infers that Ernst expected Stanford to be at the airport and drove Plaintiff there solely to have a brief encounter in the airport corridor with Stanford.

**10.** Plaintiff has described no specific occasions when Ernst made this statement, nor does she allege that this statement was in itself harassing. Instead, she offers it as evidence that the allegedly poor treatment she received was motivated by discrimination against her on the basis of age.

employment action do not tend to show that an impermissible motive affected the contested action. *See Kahl v. The Mueller Co.,* 173 F.3d 855, 173 F.3d 855, 1999 WL 196556, at *4 (6th Cir. April 1, 1999); *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025–26 (6th Cir.1993). In contrast, comments that are "pointed, clear, and directed towards" a plaintiff are more likely to be relevant. *See Pavicic v. Micro Lapping and Grinding Co., Inc.,* 12 F.3d 214, 1993 WL 498215, at * 5 (Dec. 2, 1993). Additionally, comments that are made close in time to an employment action or in the discussion of employment decisions of a decision maker are more likely probative of discriminatory animus. *See Wohler v. Toledo Stamping & Mfg. Co.,* 125 F.3d 856, 1997 WL 603422, at *6 (6th Cir. Sep.30, 1997).

The comment that Plaintiff contends Ernst made is clearly a stray one in light of these guidelines. Plaintiff has made no showing that this comment was made in the context of any discussions of employment decisions or even occurred temporally near such events. Nor does she allege that this comment was made when Ernst was explaining a personnel decision. Instead, it is the type of stray comment which is not probative of any question at issue in this matter.

Plaintiff's remaining evidence tends only to show, and then only faintly, that her supervisor fancied an employee in another ONA office. However, this falls far short of demonstrating that Ernst manipulated both his superiors and subordinates in order to arrange Plaintiff's termination because of her age. Plaintiff's argument on this point relies far too heavily on her own unsupported inferences that Ernst was out to get her.

Likewise, Plaintiff has failed to adduce sufficient evidence to satisfy her burden of demonstrating that the treatment to which she was subjected was both offensive and pervasive. While Plaintiff points to much evidence that she subjectively perceived her treatment as hostile, facts supporting a finding that a reasonable person would reach the same conclusion are much scantier.

The Court's analysis is guided by the factors listed in *Harris,* 510 U.S. at 23, 114 S.Ct. 367. The conduct that Plaintiff alleges was not severe; all the incidents of lost messages and refusals to communicate are as easily attributable to childishness and forgetfulness as they are to discriminatory animus. Additionally, the decision of Belligan and Haddy to place Plaintiff on probation did not fundamentally alter the terms of her employment; she was not penalized by this action. Instead, her work was merely subjected to heightened scrutiny, a routine incident of employment, during this period. Similarly, there is absolutely no contention that Plaintiff was subjected to conduct that was either humiliating or physically threatening. Finally, Plaintiff does assert that the conduct of her coworkers made the performance of her job more difficult; however, she has not demonstrated that they made her job unreasonably more difficult. Although she describes several instances where the failure to get a message embarrassed her, she cites no business or client that she lost because of this misconduct nor describes any situation where a client upbraided her because of the tensions in her office. Her conclusory assertions that she was hindered by the phone calls of her supervisor to her clients or by her coworkers' failure to give her supplies and messages is not enough to defeat Defendant's properly supported motion for summary judgment.

As Plaintiff has failed to demonstrate that she was harassed on the basis of her age or that any harassment created a hostile work environment, she cannot make out a prima facie case of age discrimination. Accordingly, the Court DISMISSES Plaintiff's harassment claim.

**B. Termination.**

1. Prima facie case.

In order to make out a prima facie case of age discrimination in a reduc-

tion in force case, a plaintiff must show that: 1) she was a member of a protected class (age 40 to 70); 2) she was subjected to adverse employment action; 3) he was qualified for the position; and 4) "some direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." [11] *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1467 (6th Cir.1990). If a plaintiff succeeds in making out her prima facie case, then the employer "may offer any legitimate, nondiscriminatory reason for the employment action." *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996). The plaintiff may then rebut this reason with evidence that it is pretext. Throughout this process, however, the burden of proving that age was a factor in the adverse employment action taken against a plaintiff remains with the plaintiff; the defendant is not required to prove that its proffered reason in fact motivated its employment decision. *See id.; McDonald,* 898 F.2d at 1162.

### 2. Plaintiff's profered evidence.

 Plaintiff does not dispute that ONA implemented a legitimate reduction in force in 1996. Instead, she makes several, mostly specious, arguments as to why ONA's termination of her during its reduction in force was motivated by an impermissible reason. First, she contends that, if anyone in Memphis should have been laid off, it should have been Roberson or Beck. (Pl.'s Response Summ. J. at 64.) Plaintiff apparently forgets, however, that Beck is older than her and that ONA's failure to terminate her instead of Beck is thus not probative of age discrimination.

More importantly, though, there is no dispute that ONA in late 1996 eliminated the FSR classification and terminated many people in those positions. Plaintiff was the only FSR in the Memphis office, and so was the only employee who would

have been affected by ONA's reorganization.

Plaintiff also attempts to offer statistical evidence tending to show that older people were singled out for termination during the reduction in force. There are several problems with this evidence. First, Plaintiff's entire theory is that Ernst was intent to sabotage her job and sent false disciplinary reports to his ONA superiors about her because of his discriminatory animus. Her evidence of ONA's general employment practices is not relevant to this argument.

Even if Plaintiff contends that the age discrimination was endemic in the ONA organization, however, her statistics are unpersuasive. Plaintiff expends some effort arguing that ONA had hiring practices that discriminated against older applicants. Plaintiff, however, only contests in this suit her alleged harassment and termination after several years of work—not her hiring. In any event, Plaintiff's bare numbers on this point are unhelpful. The fact that only seven out of forty-eight FSRs hired between 1992 and 1998 were over forty years old is not probative without information describing the applicant pool. (Pl.'s Resp. Summ. J. at 53.)

Plaintiff's statistical evidence regarding ONA's reduction in force is similarly unpersuasive. She notes that only two of the former FSRs who remained as SSAs after the reorganization were over forty. (Pl.'s Resp. Summ. J. at 53.) She does not relate, however, how many FSRs were over forty at the time of the reorganization, nor how many FSRs were offered positions as SSAs during the reorganization process. Moreover, Plaintiff has offered no reason to doubt ONA's assertion that the decision to place an SSA in an office after eliminating the FSR positions was made on an office by office basis. At

---

**11.** Of course, this analysis is only applicable in a reduction in force case which arises "when business considerations cause an employer to eliminate one or more positions within the company." *Barnes,* 896 F.2d at

1465. A reduction in force does not occur when an employee is replaced after a discharge. *See id.; Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 372 (6th Cir.1999).

root, Plaintiff's argument fails because there simply was no SSA position in Memphis; ONA's failure to offer her a position as an SSA is therefore not indicative of impermissible discrimination.

As Plaintiff has failed to offer any evidence tending to show that her inclusion in ONA's reduction in force was motivated by age discrimination, she cannot make out a prima facie case and the Court DISMISSES her claim that her termination violated the ADEA.

### Retaliation.

A. Prima facie case.

The ADEA also provides that: "It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

In bringing a retaliation claim, as with an age discrimination claim, the first step for a plaintiff is to establish a prima facie case of discrimination. The burden of proof to establish a prima facie case lies exclusively with the plaintiff. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 502–03, 508–10 n. 3, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff can establish a prima facie case by direct or indirect evidence. In the absence of direct evidence of discrimination, a plaintiff may meet her burden by demonstrating inferentially that she was a victim of intentional discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

██ To establish a prima facie claim of retaliation, a plaintiff must show that: 1) she engaged in activity protected by the ADEA; 2) her exercise of civil rights was known by Defendant; 3) thereafter, her employer took an employment action adverse to her; and 4) there was a causal connection between the protected activity and the employment action. *See Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987); *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990).

██ In demonstrating that she was subject to an adverse employment action in making out a prima facie case, not every unpleasant instance in the workplace will suffice. In order for treatment in the workplace to be considered materially adverse, it must be sufficiently severe. The Sixth Circuit has declined to consider a reprimand, *see Reid v. Madison County, Tenn.,* 173 F.3d 856, 1999 WL 196560 (6th Cir. Apr.1, 1999), and a transfer to an inferior position, *see Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987), as materially adverse employment actions. Similarly, the allegation that a series of facially neutral, minor incidents rose to the level of retaliatory harassment has been dismissed in this circuit. *See Matthews v. Kilroy,* 117 F.3d 1420, 1997 WL 377013, at *5 (6th Cir. July 3, 1997). Instead, courts have examined whether an employer modified an employee's pay, benefits, duties or leave time after the making of a discrimination complaint. *See Reid,* 173 F.3d 856, 1999 WL 196560, at *2.

██ In order to satisfy the causal-link element of the prima facie case requirement, a plaintiff must produce evidence "sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990)(quotation omitted). The mere fact that a plaintiff suffers an adverse employment action subsequent to participating in protected activity is insufficient to establish the fourth element of the prima facie case requirement. *See Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272–73 (6th Cir.1986).

B. Plaintiff's proffered evidence.

Plaintiff complained to Haddy that Ernst was discriminating against her on

the basis of age on March 6, 1996 and she filed an EEOC complaint on April 18, 1996. She alleges that, after engaging in these two instances of protected activity, Ernst and her coworkers retaliated against her by harassing her and ONA retaliated against her by terminating her employment in September, 1996.

Viewed against this standards elucidated above, Plaintiff does not allege that Beck, Roberson, and Ernst engaged in conduct sufficiently severe as to be considered materially adverse. Instead, they were all routine incidents of probationary employment (into which status Plaintiff entered before complaining of discrimination) or minor workplace inconveniences, such as failures to communicate and to relay messages.

As to the conduct of Roberson and Beck, Plaintiff alleges that they ceased talking to her and taking messages for her long before she made either complaint. Accordingly, their conduct could not have been caused by Plaintiff's allegations of age discrimination.

 Additionally, Plaintiff alleges that Ernst subjected her to increased scrutiny after she complained of his discriminatory treatment. Ernst's treatment of her, which consisted solely of heightened monitoring of her work, does not rise to the level of a materially adverse employment action. Moreover, it is undisputed that Plaintiff had been placed on probationary status before she made either complaint of discrimination. The fact that she was subsequently subjected to increased oversight does not indicate that she was subject to retaliation; it only verifies that she was on probationary status.

On her claim of retaliatory harassment, Plaintiff has failed to produce any evidence that she was subject to a materially adverse employment action and, therefore, she can not make out a prima facie case on this claim.

 Plaintiff's termination, on the other hand, in September, 1996 was clearly an adverse employment action. Plaintiff has failed, however, to introduce any evidence tending to show a causal connection between this action and the making of her complaints in the spring of that year. As noted, it is undisputed that Plaintiff was put on probation before she made any complaint of discrimination. Although she was no longer a probationary employee at the time of her dismissal, ONA had a legitimate reason to be displeased with her employment at the time it was making decisions about which employees to eliminate during its restructuring.

Additionally, although Plaintiff disputes the need to eliminate her position in the Memphis/Cordova office, it is undisputed that ONA eliminated all FSR positions around the country in the second half of 1996, including hers; the fact that some of these former FSRs were hired into different sales positions does not cast doubt on ONA's neutral reasons for eliminating many jobs. Further, Plaintiff makes no contention that ONA hired a replacement for her. Plaintiff has therefore failed to produce any evidence tending to show a causal connection between the making of her complaints and her termination and thus cannot make out a prima facie claim of retaliation. Accordingly, the Court DISMISSES this claim.

### Conclusion.

For the reasons stated, the Court GRANTS Defendant's Motion for Summary Judgment and DISMISSES this matter.