NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0149n.06
Filed: December 7, 2004

## No. 03-1236

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| CHARLES SLENZKA, et al., | ) |
| | ) |
|     Plaintiffs-Appellants, | ) |
| | ) **ON APPEAL FROM THE** |
| v. | ) **UNITED STATES DISTRICT** |
| | ) **COURT FOR THE EASTERN** |
| LANDSTAR RANGER, INC., | ) **DISTRICT OF MICHIGAN** |
| | ) |
|     Defendant-Appellee. | ) |

BEFORE:    KEITH and CLAY, Circuit Judges; OBERDORFER, District Judge[*]

    **OBERDORFER, District Judge**. Nearly fifty current and former employees of Defendant

Landstar Ranger, Inc. ("Landstar"), a long-distance freight haul trucking company, appeal the

dismissal of their employment discrimination claims. Plaintiffs brought their claims on a disparate

impact theory under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.

The district court chose not to rest its dismissal of their claims on its resolution of the question --

arguably open in this Circuit[1] -- of whether disparate impact claims are viable under the ADEA.

---

    [*]    The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

    [1]    Although we held in *Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 872 (6th Cir. 1990), that a disparate impact theory is available under the ADEA, we have since noted that the Supreme Court's subsequent decision in *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), cast "considerable doubt" on this question. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998); *Lyon v. Ohio Educ. Ass'n & Prof. Staff Union*, 53 F.3d 135, 139 n.5 (6th Cir. 1995). The Supreme Court heard argument on November 3, 2004 in *Smith v. City of Jackson*, No. 03-1160, on the question of whether disparate impact claims may be brought under the ADEA. We do not reach that issue in the instant case.

Instead, it resolved another issue of first impression, holding that Plaintiffs did not state a claim because they did not allege that Landstar caused their injuries directly but that they were harmed by a third party's response to a discriminatory Landstar policy. We need not reach either of these potentially controversial issues. We affirm because we find that Plaintiffs failed as a matter of law to state a claim of age discrimination.

## I.  FACTUAL BACKGROUND

Plaintiffs are interstate truck drivers who own and operate trucks that they lease to Landstar. All Plaintiffs are at least fifty years old and have worked for Landstar or its predecessor for at least twenty years. Plaintiffs work for Landstar pursuant to collective bargaining agreements negotiated by locals of the International Brotherhood of Teamsters (the "Union"). Those agreements require Landstar to make payments on behalf of Plaintiffs to third-party employee benefit plans, the Central States Pension Plan and the Central States Health & Welfare Plan ("Central States" or the "Benefit Plans").

Beginning in 1985, Landstar adopted a policy of classifying new -- and thus, on the whole, younger -- hires as "independent contractors" rather than employees. The Union agreed to this policy, which prevented the new hires from becoming union members and kept them from enjoying union rights, including participation in the Benefit Plans.

Plaintiffs claim that Central States "warned defendant on multiple occasions that defendant's failure to permit younger workers to participa[te] in the funds would result in the defendant's termination from the funds to the detriment of its employees." Appellants' Br. at 11.[2]

On September 19, 2000, Central States notified Plaintiffs and the other Landstar employees covered by the Benefit Plans that their participation in the plans would be terminated, effective October 2000, "as a result of defendant Landstar's deliberate policy of 'adverse selection.'" First Amended Complaint ("FAC") ¶ 22. Central States informed plan participants that they would need to retire within six months of the notice to retain certain benefits. Some of the Plaintiffs retired, while others did not. Plaintiffs who were eligible to retire and felt they could not afford to lose their benefits, or whose eligibility for retirement depended on benefits that would be lost, claim they were "forced to retire immediately, resulting in the loss of future pension credits for higher pensions." FAC ¶ 24. Plaintiffs who could not retire, or chose not to, lost various benefits.

Six Plaintiffs filed the original complaint as a class action on April 16, 2001. The First Amended Complaint, filed on July 1, 2002, listed forty-nine named Plaintiffs and again sought class relief. On September 16, 2002, the parties filed a Stipulation of Partial Dismissal that narrowed the

---

[2]     This issue apparently led to a requirement in the 1995-99 collective bargaining agreement that Landstar maintain a union workforce of, and make benefit contributions on behalf of, 175 union drivers. Plaintiffs allege that Landstar violated this agreement by allowing the number of union drivers to fall below 175 due to its hiring new drivers as "independent contractors," and then attempted to make up for this shortfall by making contributions on behalf of fictitious employees. Landstar denies violating the agreement. Because this is an appeal from a motion to dismiss, we must accept Plaintiffs' allegations at this stage. The question of whether Landstar complied with its contractual obligations, however, is not directly relevant to Plaintiffs' age discrimination claims, which are the only claims raised here.

issues in a number of ways, including dismissing the class allegations and dropping some claims and individual Defendants.[3]

The sole remaining claim was an age discrimination claim brought under a disparate impact theory. Defendant moved to dismiss this claim, primarily on the ground that disparate impact claims are not viable under the Age Discrimination in Employment Act. Landstar also argued that Plaintiffs had not stated a cause of action since their alleged injuries were the result of an independent decision by the third-party Benefit Plans.

The district court granted the motion to dismiss on January 16, 2003. It recognized the existence of a circuit split regarding the viability of disparate impact theory for age discrimination claims, noting that this Circuit has yet to take a firm position on the issue in the wake of *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). The district court concluded that it need not resolve that issue. Instead, the court based its decision on the second ground Landstar raised, holding that "Plaintiffs take the disparate impact theory beyond its logical boundaries when they suggest it can be used to hold employer[s] liable under the ADEA for actions taken by independent third parties over whom they have no control." The district court held that neither it nor Plaintiffs had "found any legal support for Plaintiffs' position" that employers could be liable even where "the agency of the *coup de grace* is a third[] party."

## II. Analysis

---

[3]     Although Plaintiffs at times refer to this suit as being on behalf of a "class" or "class members," they have not made any request to reinstate the class claims.

We review *de novo* a decision granting a motion to dismiss. We may affirm "on *any ground* supported by the record, even if it is different from the grounds relied on by the district court." *Lawrence v. Chancery Ct. of Tennesee*, 188 F.3d 687 (6th Cir. 1999) (emphasis added). This is so regardless of whether the parties have raised the issue. *See*, *e.g.*, *Hutcherson v. Lauderdale County*, 326 F.3d 747, 756 (6th Cir. 2003) (citing *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 445-448 (1993) to demonstrate "the power of appellate courts to consider an issue not raised by the parties"); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000).

The district court dismissed this case on the ground that it was not Landstar's policy but the independent act of the third-party Benefit Plans that "had a disproportionate adverse impact on Plaintiffs." Plaintiffs allege that the Benefit Plans' action was not truly "independent" because the Plans, having repeatedly warned Landstar that its "adverse selection" policy put its employees' coverage at risk, acted in response to, and because of, that policy. Thus, Plaintiffs claim, Landstar's discriminatory policy proximately caused the harm they suffered. Landstar responds that an age discrimination claim can be viable only where the alleged "adverse impact has been the direct result of the employer's action or practice, not the independent decision or action of a third party." Appellee's Br. at 16. Although Landstar argues that Plaintiffs' reliance on proximate cause analysis is "misguided," *id.* at 17, it cites no case supporting its claim that an employer can be liable only for injuries it causes directly and not for the foreseeable consequences of its discriminatory policies.

We are troubled by the conclusion urged here (and reached below) that an employer can *never* be liable when its discriminatory action or policy triggers third-party actions that in turn injure its employees. Under Landstar's theory, even if Plaintiffs are right that Landstar adopted an illegal

and discriminatory policy that caused, and that Landstar *knew* would cause, Central States to terminate Plaintiffs' benefits, Landstar could not be liable because it did not cause Plaintiffs' injuries directly. Such a conclusion is especially troubling where the purportedly independent party is acting on behalf of or in place of the employer. Here, for example, Landstar in effect "outsourced" its employee benefit program by contracting with the Benefit Plans to have them provide and administer those benefits. It is difficult to see why an employer should escape responsibility for any harm its discriminatory policies caused its employees merely because it placed an intermediary between such policies and their foreseeable harmful consequences to the terms and conditions under which its employees were working.

We need not, however, resolve this novel issue or assess its application to the facts alleged here. Nor need we reach the question of whether disparate impact claims remain viable under the ADEA. We find that Plaintiffs have not stated a claim upon which relief can be granted, under a disparate impact theory or otherwise, albeit not for the reasons suggested.

Plaintiffs claim that Landstar's policy of not providing benefits to a group comprised mainly of *younger* employees ultimately deprived Plaintiffs, as older employees, of some of those same benefits. Thus, Plaintiffs allege, Landstar discriminated against its older employees by depriving them of benefits that were *not even available to the younger employees*. This is a strange claim of "discrimination" indeed. By arguing that Landstar's policy deprived its older employees of an advantage they previously enjoyed over younger employees, Plaintiffs are, in effect, arguing that the older employees were entitled to *better* treatment than the younger employees. The ADEA, however, "does not require an employer to accord special treatment to employees over forty years

of age[, but to treat] an employee's age . . . in a neutral fashion." *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982) (citing *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)). "The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations . . . ." *Allen v. Diebold*, 33 F.3d 674, 677 (6th Cir. 1994).[4]

Although Plaintiffs rely on a disparate impact theory, the facts they allege do not show that Landstar's policy had a "disparate impact" on them. Disparate impact theory may be available where "employment practices that are facially neutral in their treatment of different groups . . . in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). Here, Landstar's practice of hiring new truckers as independent contractors rather than union employees cannot fairly be said to "*fall more harshly*" on employees protected by the ADEA than on the generally younger independent contractors. The challenged policy precluded independent contractors from participating in the Benefit Plans *at all*. That it ultimately deprived older employees of *continued* participation -- leaving them in no worse a position than the new hires -- does not constitute "more harsh[]" treatment of the older workers.

---

[4] That the *ADEA* did not require Landstar to continue providing its (generally) older, unionized workers with benefits it was not providing its other employees does not mean Landstar was free to deprive Plaintiffs of the benefits for which the union had bargained. *Cf. Hazen Paper*, 507 U.S. at 612 (fact that employer did not violate ADEA by firing employee to prevent his benefits from vesting did not imply that termination was lawful, merely that any illegality must derive from some other source). The question of whether Landstar honored its obligations to Plaintiffs under the governing collective-bargaining agreements is not, however, at issue in this proceeding. This decision is without prejudice to the union members' ability to pursue relief through other avenues that may be available to them.

In rejecting a claim that an early retirement offer violated the ADEA, the Seventh Circuit explained that employees are better off when given the option to take or reject such offers. *Henn v. Nat'l Geographic Soc'y*, 819 F.2d 824, 826 (7th Cir. 1987). Whether they retire to accept the offered benefits or continue to work and forfeit them, they are better positioned than those whose only option is to continue to work without the benefits. "An employee to whom [an early retirement] offer has been extended . . . is the *beneficiary* of any distinction on the basis of age [and cannot] claim to be adversely affected by discrimination in the design or offer of the early retirement package." *Id.* at 827 (emphasis added). Similarly, here, the employees who were told they would have to retire within six months to preserve certain benefits were surely in a better position than those who had never had those benefits. Under the circumstances, Plaintiffs' allegations do not amount to a claim that Landstar's policy has had a disproportionate adverse impact on older workers.

Plaintiffs' claims also suffer from the lack of any evidence suggesting that the alleged deprivation of benefits is "because of" their age, as it must be to violate the ADEA. This Court has rejected previous attempts to equate an employer's shift away from union labor or attempt to avoid costs associated with union labor with age discrimination. In *Allen v. Diebold*, 33 F.3d 674 (6th Cir. 1994), we rejected a claim that the closure of two unionized manufacturing plants (where a high proportion of employees were over forty) to open two non-union plants in other states (where the vast majority of those hired were under forty) was age discrimination. We held that the challenged switch from union to non-union labor was not something "the ADEA was . . . intended to protect

older workers from." *Id.* at 677. Stating that plaintiffs had to show they were discriminated against "because they were old, not because they were expensive," *id.*, we concluded that:

> The heart of plaintiffs' allegation--that defendant replaced them with younger workers because they were too costly--does not state a claim under the ADEA. Plaintiffs allege that Diebold downsized its Ohio operations and hired younger, cheaper, non-union employees in Virginia and South Carolina in order to increase its profitability. They argue that their salaries and benefits were a burden to the company whose management believed it could make more money by moving to a "right to work" state, hiring fewer workers and paying them lower wages. . . . This allegation--that Diebold's decision to restructure was driven by financial considerations based on the profit motive--does not state a claim under the ADEA. The ADEA does not bar the discharge of older employees but only prohibits employers from discriminating against them.

*Id.* at 679. There is no suggestion here that Plaintiffs' alleged injury was caused by anything other than Landstar's shift to non-union labor to save money.

This Court similarly rejected a claim that an employer discriminated on the basis of age by imposing a moratorium on hiring former employees (who tended to be older than those actually hired) pending grievance proceedings to determine whether the former employees were entitled to additional benefits if hired. *Abbott v. Federal Forge, Inc.*, 912 F.2d 867 (6th Cir. 1990). There, as here, the group claiming to be adversely affected by the challenged policy contained a higher percentage of older employees than the group that was not affected. In rejecting the *Abbott* plaintiffs' disparate impact analysis, we reasoned that, were an employer willing to "offer[] the job to older employees on the *same terms as younger*, [it] would demonstrate that the employment practice is the cost-saving measure it purports to be and not a pretext for age discrimination." *Id.* at 876 (emphasis added). Thus, discrimination could be shown only if the defendant were unwilling to hire its former employees even if they were "*in exactly the same position* as other workers," that

is, if they were not seeking *additional* compensation because of their status. *Id.* (emphasis added).

Here, it is undisputed that Landstar was willing to employ the allegedly older workers on the same

terms as the allegedly younger workers as to these benefits. Indeed, that is the very complaint made

here: that the generally older union employees were being forced to accept the same lack of benefits

as the generally younger non-union employees.

## CONCLUSION

For the foregoing reasons, the court affirms the district court's dismissal of Plaintiffs' claims.