NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0573n.06

No. 08-5579

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 18, 2009**
LEONARD GREEN, Clerk

CHARLOTTE OWENS,                      )
                                      )
    **Plaintiff-Appellant,**         )        **ON APPEAL** FROM THE
                                      )        UNITED STATES DISTRICT
v.                                    )        COURT FOR THE EASTERN
                                      )        DISTRICT OF TENNESSEE
WELLMONT, INC.,                       )
                                      )
    **Defendant-Appellee.**          )        **O P I N I O N**
                                      )
_____ )

**Before: MOORE and ROGERS, Circuit Judges; THAPAR,**[*] **District Judge.**

    **KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Charlotte Owens ("Owens") appeals from the district court's grant of summary judgment in favor of Defendant-Appellee Wellmont, Inc. and/or d/b/a Wellmont Holston Valley Medical Center ("Wellmont"). Owens brought two age-discrimination claims against Wellmont under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 et seq., claiming that, because of Owens's age, Wellmont eliminated Owens's position as a physical therapy technician ("PTT") as part of a reduction-in-force effort and refused to rehire Owens to any other position. For the reasons discussed below, we **AFFIRM** the district court's grant of summary judgment with respect to Owens's unlawful-

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

discharge claim, **REVERSE** the district court's grant of summary judgment with respect to Owens's failure-to-rehire claim, and **REMAND** for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURE

The facts of this case are heavily disputed. The district court described the pertinent facts and party assertions as follows:

Charlotte Owens ("Owens") was employed by Wellmont, Inc. d/b/a Wellmont Holston Valley Medical Center ("Wellmont") from May 1970 until her termination on June 23, 2003 (effective July 23, 2003). At the time of her termination, Owens was 54 years of age and employed as a physical therapy technician ("PTT" or "technician") in Wellmont's inpatient physical therapy department. From 1996 until her termination, Owens' supervisor was Jose Vivaldi ("Vivaldi"), the system director for inpatient rehabilitation services for Wellmont.

In May 2003, a budgetary review, which included a productivity analysis, was conducted to determine whether the inpatient department was overstaffed with PTTs. This review revealed that the department was overstaffed with technicians and established a need to hire more licensed physical therapy assistants ("LPTA" or "assistants"), which would allow Wellmont to bill for more services than it could with PTTs. According to Wellmont, it then decided, as a result of the review and in order to meet budgetary restraints, to reduce the number of technicians in the inpatient department by eliminating one open PTT position and by laying off two full-time employees. In order to determine which employees would be laid off, Vivaldi formed a leadership team consisting of himself, Clayton Chapman, an occupational therapist, Linda Gemayel, a speech and hearing therapist, and Michelle Henry, a physical therapist.[1] The leadership team evaluated the PTTs on five job-related criteria set forth in Wellmont's policy on temporary/permanent force reductions: 1) years of service; 2) performance; 3) dependability/reliability; 4) flexibility; and 5) job criticality.

The technicians in the inpatient department were given a score from 1 to 5 on each of these job related criterion, with one being the lowest and five being the highest, except for years of service, which was scored from 1 to 3. Technicians with greater seniority received higher scores on the years of service criterion. The scores were averaged and the technicians ranked from highest to lowest average score. Owens received the fifth lowest score of the six technicians. Two of those who received higher scores than Owens were over 50 years old. The decision was made to eliminate the positions of those with the lowest scores, that of Owens and a male technician, Mike Corder, who was less than 30 years of age at the time. According

to Vivaldi, Owens' age was neither a factor nor a consideration in the decision to eliminate Owens' position. Owens was informed of Wellmont's decision on June 24, 2003, by Vivaldi and Mack Lowe ("Lowe"), Human Resources Specialist.[2]

It was the practice of Wellmont, during any reduction in force, to work with displaced employees to place them in other departments at the hospital. Wellmont's reduction in force policy, however, does not provide any recall rights. At the time Corder was told of the decision to eliminate his position, he was given the option to transfer to another position and he accepted a position as a linen distribution clerk in the environmental services department. Owens was not offered a transfer on June 24; however, she inquired about the possibility of working part time in the inpatient department. At this point, the accounts of the parties about what happened diverge significantly.

Wellmont claims that Lowe began immediately, during the June 24 meeting, to place Owens in another position at the hospital, calling Carol Forrest ("Forrest"), manager of the hospital's central sterile processing department while Owens was still in his office, to inquire about a possible opening. Forrest had an opening at the same pay grade as Owens' previous position and indicated she would like to interview Owens. According to Lowe, Owens was informed of the opening and was supposed to meet with Forrest the next day. Owens did not appear to meet with Forrest, never contacted Forrest and expressed no further interest in the position. Wellmont contends that Owens "likely would have been offered" the position, if she had pursued it.

Owens, on the other hand, claims she asked Lowe about part-time work and was told nothing was available. She denies that Lowe ever told her about a possible opening in central sterile processing. Owens claims she met with Lowe two days after her termination and again asked about part-time or Registry work to fill in for PTTs on their days off and vacation.[3] Lowe again said there was "nothing" for her. At Owens' request, Lowe made an appointment for Owens to meet with Rhonda McGhee ("McGhee"), supervisor of patient care.

The parties agree that Owens talked with McGhee about an opening in patient care. Owens had previously worked in patient care and was believed qualified to perform the duties of the position. The job was offered to Owens, she indicated she would take the position and a work schedule was prepared for her, which required three twelve (12) hour shifts per week rather than the five eight (8) hour shifts she had previously worked. Vivaldi was informed by Lowe that Owens had been hired for the opening. Believing she "could [not] physically perform at [her] best" on this schedule, Owens later declined the position.[4] This position would have been at the same pay grade as Owens' prior position.[5]

3

Once again, the parties' accounts of what happened next show substantial disagreement. According to Wellmont, plaintiff was then offered a Registry position which would have allowed Owens to work twenty (20) hours per week in the inpatient department. Admittedly, this position was not the same as her former position. Owens was also informed that the inpatient department was not hiring any new PTTs and any new hires in the department would be LPTAs. Owens, according to Wellmont, declined the offer "because she did not want to work with Mr. Vivaldi." On the other hand, . . . Owens denies that she even discussed the position or was ever offered the position.

_____

FN1: As discussed *infra*, Owens claims that formation of the leadership team was not authorized by Wellmont's reduction in force policy and was part of Wellmont's "pretext" for discrimination.

FN2: Although informed of Wellmont's decision on June 24, Owens' termination letter was dated June 23.

FN3: Registry employees are part of the hospital's supplemental staff, used to meet customer needs or to resolve special employment situations.

FN4: Wellmont claims Owens "never reported to work." Owens agrees but claims she told Wellmont she was declining the position.

FN5: In her response to "Defendant's Concise Statement of Undisputed Facts," Owens denies that the pay grade would have been the same; however, she points to nothing in the record which disputes this fact.

*Owens v. Wellmont, Inc.*, No. 2:04-CV-274, 2008 WL 752640, at *1-2 (E.D. Tenn. March 19, 2008) (third alteration added) (footnotes 1-5 in original).

Owens contends that she met with Adams on several occasions to inquire about specific job postings. One such meeting occurred in early September 2003 and concerned an in-patient physical therapy department PTT job posting that was posted on September 3, 2003. On September 24, 2003, Vivaldi requested that the posted September PTT position be changed to a LPTA position. According to Vivaldi, this request occurred

after a conversation with Wellmont's vice president, during which [Vivaldi] was reminded of the productivity analysis . . . .[6] A 26 year old LPTA was hired by Wellmont for the position as a Registry employee. . . . It was not disputed that Owens was not qualified for a LPTA position. In February 2004, a PTT in the inpatient department resigned her employment with Wellmont. Vivaldi posted the vacancy "internally," and a Registry employee who was 34 years of age was placed in the open PTT position in early April 2004.

_____

    FN6: Plaintiff objects that the content of the conversation between Vivaldi and Wellmont's vice president as hearsay. To the extent that the reminder to Vivaldi of the productivity analysis and the need for more LPTAs is offered to explain why Vivaldi asked for the posting to be changed, it is not hearsay.

*Owens*, 2008 WL 752640, at *3.

Owens filed a complaint alleging age discrimination in violation of the ADEA and the THRA. The complaint included two claims, the first regarding Wellmont's discharge of Owens and the second regarding Wellmont's actions post-discharge. On March 16, 2007, Wellmont filed a motion for summary judgment. The district court granted the motion, concluding (1) that Owens failed to make a prima facie case regarding her termination claim and, even if Owens had established a prima facie case, she pointed to no evidence in the record from which the district court could infer that Wellmont's reduction-in-force rationale for Owens's termination was pretextual; and (2) that Owens could not establish a prima facie case for her post-discharge claim, which is essentially a failure-to-rehire claim, because Owens never formally applied for any of the positions that she claims were denied her. Owens timely appealed.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

"We review de novo a district court's grant of summary judgment." *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 444 (6th Cir. 2009). Fed. R. Civ. P. 56(c) states that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When we review a motion for summary judgment, we must view all facts and inferences in the light most favorable to the non-moving party." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). "We examine the grant of summary judgment to determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (internal quotation marks omitted).

### B. ADEA[1]

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "An age-discrimination plaintiff may support her claim with either direct evidence or indirect (also called circumstantial) evidence." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences," *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004), while circumstantial evidence is "evidence requiring inferences to reach the conclusion that the defendant discriminated against the

---

[1]Owens's THRA claims are subject to the same standard of proof as her ADEA claims, *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 15-16 & n.6 (6th Cir. 2007); thus we will specifically address only the ADEA claims.

plaintiff," *Blair*, 505 F.3d at 524.  When a plaintiff offers only circumstantial evidence of age

discrimination, we must analyze the claim under the *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973), burden-shifting framework.  *Rowan*, 360 F.3d at 547.  Under this framework,

> the plaintiff must first submit evidence from which a reasonable jury could conclude
> that he or she established a prima facie case of discrimination.  The defendant must
> then offer admissible evidence of a legitimate, nondiscriminatory reason for its
> action.  If the defendant does so, the plaintiff must identify evidence from which a
> reasonable jury could conclude that the proffered reason is actually a pretext for
> unlawful discrimination.

*Blair*, 505 F.3d at 524 (internal citations omitted).

As the district court noted, Owens appears to make two separate claims under the ADEA:

(1) Wellmont unlawfully discharged Owens because of her age; and (2) post-discharge, Wellmont

unlawfully failed to rehire Owens because of her age.  Owens offers no direct evidence to support

either claim; thus, both claims are subject to *McDonnell Douglas* analysis.

### 1.  Unlawful Discharge

Typically, "[i]n order to establish a prima facie case of age discrimination using

circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that:  (1)

he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected

to an adverse employment action; (3) he was qualified for the position; and (4) he was treated

differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt

Univ.*, 389 F.3d 177, 181 (6th Cir. 2004); *see also Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir.

2006).  However, when the plaintiff was discharged as part of a reduction-in-force program, the

fourth prong is modified and the plaintiff is required to show "'additional direct, circumstantial, or

statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for

7

impermissible reasons.'" *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

It is undisputed that Owens was at least forty years old at the time of discharge, that her discharge constitutes an adverse employment action, and that she was qualified to perform her PTT position. Thus, the only prong in dispute in the instant appeal is the fourth prong, which Owens contends is satisfied by the circumstances surrounding the reduction in force. We need not, however, determine the merits of Owens's argument because it is clear that Owens has failed to produce any evidence that Wellmont's reduction-in-force rationale for Owens's discharge is pretextual. *See Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (determining that the panel "need not address whether [plaintiff] made out her prima facie case, because she has failed to produce any evidence that Grand Trunk's decision was mere pretext and has therefore failed to carry her ultimate burden of persuasion").

Once a plaintiff establishes a prima facie case of age discrimination, "[t]he defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Blair*, 505 F.3d at 524 (internal citation omitted). It is undisputed that Wellmont's reduction-in-force rationale for terminating Owens is a legitimate, nondiscriminatory reason for discharging Owens. Thus, even if Owens could establish a prima facie case of discrimination, Owens would still have the burden to show that Wellmont's reduction-in-force rationale is pretextual. Owens cannot meet this burden.

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge

an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998); *Asmo*, 471 F.3d at 595. As the district court correctly notes, Owens's concession regarding the validity of the productivity analysis and the recommendation contained therein prevents Owens from arguing that Wellmont's reduction-in-force rationale is not based in fact or was never used to discharge employees. *Owens*, 2008 WL 752640, at *10; *see also* Owens Br. at 47 ("The plaintiff is not challenging the fact that an efficiency study was undertaken by Wellmont during the Spring of 2003 and that a reduction in the number of the Medical Center's in-patient physical therapy department PTTs was recommended."). Moreover, Owens does not make any specific argument that Wellmont's asserted rationale is pretextual; Owens merely states generally that "Vivaldi's matrix evaluation and Leadership Team ranking process was fraught with contradictions and inconsistencies and were a pretext to cover up age discrimination." Owens Br. at 40. Owens points to nothing in the record to support this assertion, nor could we find any such evidence. Therefore, we conclude that Owens has failed to establish pretext, and we **AFFIRM** the district court's grant of summary judgment to Wellmont on Owens's termination claim.

## 2. Post-Discharge Claim

Owens argues that Wellmont discriminated against her based on age by failing to transfer[2] or rehire Owens after she was discharged—essentially, Owens is asserting a failure-to-rehire claim.

---

[2]Owens's assertion regarding Wellmont's failure to transfer her fails because the undisputed facts establish that Wellmont did offer to transfer Owens to the W-2 Patient Care position. Owens decided not to accept the transfer, and this decision does not establish a claim for age discrimination. Owens insists that Wellmont was required to offer her a "substantially equivalent" position, but this assertion is legally incorrect. The concept of "substantially equivalent" employment applies to a plaintiff's duty to mitigate his or her damages with respect to front pay, *see, e.g., EEOC v. Allen Petroleum Co. of E. Tenn., Inc.*, No. 94-5355, 1996 WL 325249, at *6 (6th Cir. June 12, 1996), and is thus inapplicable at this stage of the proceedings.

9

It is important to note that Owens had no right to be rehired by Wellmont. *See* Record on Appeal ("ROA") at 55 (Wellmont Temporary/Permanent Reductions in Force Policy at 3); *see also Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986) ("Where an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company."); *Almond v. ABB Indus. Sys., Inc.*, 56 F. App'x 672, 678 (6th Cir. 2003) (same). Owens can still establish a prima facie case for a claim of failure to rehire based on age discrimination if she can demonstrate that: (1) she "is a member of the protected age group"; (2) she "is qualified for the rehire or recall position"; (3) she "applied for the available position or can establish that the employer was otherwise obligated to consider h[er]"; and (4) "the position went to a younger individual outside the protected class or that other reasonable evidence exists for inferring that [s]he was denied a position because of h[er] age." *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989); *Grant v. Harcourt Brace Coll. Publishers*, No. 98-3829, 1999 WL 717982, at *3 (6th Cir. Sept. 9, 1999). Typically, a generalized expression of interest in a position is not enough to satisfy the third prong of the *Wanger* test. *Wanger*, 872 F.2d at 147 ("With limited exceptions, one cannot establish that he was subject to an adverse hiring decision unless he makes his desire for the position known to the employer."). However, "depending on the facts of the particular case, an employee need not formally apply for a position." *Grant*, 1999 WL 717982, at *4. Instead, "[t]he job-seeker must make a reasonable attempt to demonstrate to the employer that he is interested in the job." *Id*. (citing *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993)). The circumstances of a particular case determine whether a plaintiff's actions were sufficient to demonstrate an interest in the position. *Grant*, 1999 WL 717982, at *4.

The district court found that Owens could not establish the third prong of her prima facie case because "[i]t is undisputed . . . that Owens never formally applied for any of the positions in question" and Owens "made no reasonable attempt to demonstrate to Wellmont that she was interested in any of the PTT positions." *Owens*, 2008 WL 752640, at *12. We conclude that this finding is not correct, but only with respect to the September 3, 2003 PTT job posting.

According to Owens's revised affidavit, she went to see Adams about an in-patient PTT posting in early September 2003 and "asked [Adams] for the PTT job."[3] ROA at 448 (Owens Revised Aff. ¶ 45); *see also* ROA at 489 (9/3/03 PTT Job Detail). Although Owens may not have formally applied for the September 3 PTT position at that time, it seems clear that, under the circumstances, a formal application was not required. Owens did more than make a generalized

---

[3]The date of this meeting is disputed. At oral argument, Wellmont contended that this meeting occurred on or after September 10, 2003. As explained below, the individual Owens contends was hired to fill this position has a hire date of September 8, 2003. If Owens did not inquire about the position until September 10, then the position would not have been an "available position" at the time that she inquired about the job. This argument is unconvincing for at least two reasons. First, none of the affidavits prepared by Wellmont employees states that, at the time that Owens inquired about the September 3 posting, the position was already filled. In fact, Adams insists that no full-time employee was ever hired to fill this position. ROA at 66 (Adams Aff. ¶ 14). The fact that the PTT position was allegedly filled at the time that Owens inquired about the posting would be an obvious defense to this action, and it seems strange that Wellmont would not produce concrete testimony regarding that fact or raise the issue in its briefing if Wellmont's assertion is accurate.

Second, and more important, the portion of Owens's deposition testimony cited in support of this argument is ambiguous at best regarding whether the Adams meeting took place on or after September 10. *See* ROA 336 (Owens 3/2/07 Dep. at 90). Moreover, other pieces of Owens's deposition testimony and affidavit support an inference that Owens met with Adams to discuss the September 3 PTT position on September 8, 2003, or earlier. *See* ROA at 418 (Owens 3/2/07 Dep. at 115); ROA at 448 (Owens Revised Aff. ¶ 45). A meeting on September 8 could have occurred while the PTT position was still available. Because we must interpret the evidence in the light most favorable to Owens and resolve all conflicts in Owens's favor at the summary-judgment stage, we must draw the permissible inference that Owens met with Adams and inquired about the September 3 PTT posting before that position was filled.

11

expression of interest in working for Wellmont—Owens specifically informed Adams that Owens was interested in a position that was currently open. Moreover, the record supports an inference that Wellmont had offered Owens positions in the past without a formal application. For example, there is no indication in the record that Owens formally applied for the W-2 Patient Care Technician position before it was offered to her; rather, she merely spoke to Lowe and McGhee about the job. *See, e.g.*, ROA at 34 (Owens 12/20/06 Dep. at 141). Thus, under these circumstances, it appears that Owens made "a reasonable attempt to demonstrate to the employer that [s]he [wa]s interested in the job." *Grant*, 1999 WL 717982, at *4; *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990) ("Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer."). We therefore hold that Owens has satisfied the third prong of the *Wanger* test.

Further, when reviewing the record in the light most favorable to Owens, we conclude that Owens has satisfied the other three prongs of the *Wanger* test. It is undisputed that Owens is a member of the protected class and that she is qualified for a PTT position. As to who was hired to fill the PTT position in question, evidence in the record reveals that the physical therapy in-patient department hired Larra Schwartz ("Schwartz"), a 26-year-old LPTA, on September 8, 2009. ROA at 493-94 (July 2004 Physical Therapy In-Patient Dep't Roster). No other individual was hired by that department in 2003. Thus, an inference can be drawn that Schwartz was hired to fill the PTT position about which Owens inquired.[4] Because Schwartz is not a member of the protected class,

_____

[4]Adams asserts in her affidavit that the PTT position that Owens inquired about was recategorized as a LPTA position "on or about September 26, 2003 . . . to be in line with the recommendations from the productivity analysis," and that that position "was never filled by a full-

12

Owens has satisfied the fourth prong of *Wanger*. Accordingly, we hold that Owens has made out a prima facie case for her failure-to-rehire claim and we **REVERSE** the district court's grant of summary judgment on that claim.

## III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's grant of summary judgment with regard to Owens's unlawful discharge claim, **REVERSE** the district court's grant of summary judgment with regard to Owens's failure-to-rehire claim, and **REMAND** for further proceedings consistent with this opinion.

---

time employee." ROA at 66 (Adams Aff. ¶¶ 13-14). Adams asserts that Schwartz was "hired as a Registry employee" and "worked as a Registry employee as a [LPTA] in the Inpatient Department." ROA at 66-67 (Adams Aff. ¶ 14). However, as explained above, when drawing all reasonable inferences in favor of Owens, on the current record, we must conclude that there is a genuine issue of material fact regarding whether Schwartz was hired to fill the PTT position in question. That PTT position was not recategorized until September 26, 2003, yet Schwartz was hired on September 8, 2003. Thus, a jury could conclude that, regardless of any official title Adams assigned to Schwartz, Schwartz was hired to fill the PTT position that Owens sought.